**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | |
|---|---|
| JOSE RESENDEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 3:16-CV-862-JVB-MGG |
| ) | |
| SHANE PRANCE, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**REPORT AND RECOMMENDATION**

On May 16, 2017, Defendants, Shane Prance, Thomas Albano, James Dworkin, Mitch Daniels, Purdue University Northwest ("PNW") (formerly known as Purdue University North-Central ("PNC"), Purdue University, and the trustees of Purdue University (collectively, "the Defendants"), filed their Motion to Dismiss. On May 31, 2017, Plaintiff Jose Resendez ("Resendez"), filed his response in opposition to Defendants' motion. Defendants' motion became ripe on June 2, 2017, when Defendants filed a reply brief. On October 19, 2017, Defendants' motion was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b), and N. D. Ind. L.R. 72-1(b). Before the undersigned could issue a report and recommendation, Defendants augmented the record by filing a Notice of Supplemental Authorities on December 26, 2017. Resendez filed his response to Defendants' supplemental authorities on January 10, 2018. For the following reasons, the undersigned **RECOMMENDS** that Defendants' motion be **GRANTED**. [DE 21].

I.     RELEVANT BACKGROUND

Resendez brought this action as the result of a series of events culminating in his suspension from the PNC baseball team. As he alleges himself, Resendez is a brown-skinned and darkly complexioned[1] Hispanic of Mexican descent, who enrolled as a student at PNC on August 26, 2013, and earned a spot on the PNC baseball team for the 2014-2015 season. [DE 17 at 2-3, ¶¶ 16, 28, 31]. Resendez alleges that Shane Prance ("Prance"), the team's head coach, maliciously directed a racially derogatory comment at him on March 19, 2015, when he said, "I don't want to deal with campus police saying a Mexican with a beard is jumping the fence and causing trouble on the field, [Resendez] that was directed to you." [Id. at 3-4, ¶ 34]. On March 30, 2015, Prance then called Resendez a "pussy" and a "lazy piece of shit," which led to a verbal altercation between them. [Id., ¶¶ 32, 36, 38]. Afterwards, on March 31, 2015, Prance forced Resendez, and Resendez alone, to run for two hours straight rather than be engaged in the team's regular practice session. [Id., ¶ 40].

Subsequently, Prance allegedly told Resendez's father, who had called Prance, that Resendez had attacked him and chest-bumped him four to five times during the March 30th altercation. Similarly, Prance allegedly told PNC athletic director Tom Albano ("Albano") that Resendez had physically assaulted him by charging and bumping into him during the March 30th altercation. [Id. at 3, 6, ¶¶ 41, 58].[2]

On April 13, 2015, Prance filed a police report regarding a separate incident at his home. According to the police report attached to Resendez's Amended Complaint, Prance was lying in his bed in Westville, Indiana when a paint ball gun was fired at his house. [DE 17-1 at 5]. Prance

---

[1] Although ¶ 16 states that Resendez is "darker complicated," the court infers this meaning from the surrounding context.
[2] Despite the grammatical form of ¶ 41 of Resendez's Amended Complaint, the undersigned infers based on context that Coach Prance, not Resendez's father, who stated that he had been attacked and chest bumped by Resendez.

then reported seeing Resendez's girlfriend's vehicle parked in front of his residence, and that he later saw Resendez driving that same vehicle. Resendez denies having had anything to do with the paint ball attacks and alleges he and his girlfriend were in LaPorte, Indiana at the time of the incident.

The day after, however, Resendez met with Albano as documented in a PNC Police Department Case Report attached to Resendez's Amended Complaint. [*Id.* at 2]. During the meeting, Albano discussed with Resendez what appears to be the March 30th altercation with Prance as well as the April 13th paint ball incident at Prance's home. Additionally, Resendez was informed that he was suspended from the baseball team until an investigation into the incidents was completed. [*Id.*].

On October 6, 2015, Resendez then filed a false information report with the PNC Police Department as documented in a supplemental Case Report attached to Resendez's Amended Complaint. [*Id.* at 1]. In the supplemental report, Resendez indicated that Albano and Prance had given false information in a previous police report, presumably regarding the March 30th altercation and the paint ball incident. The supplemental report stated that "Albano conducted an investigation and found that [Prance's] allegation was false yet [Resendez] remains suspended." [*Id.*]. Resendez alleges that no one at PNC filed false reporting charges relating to this incident. [DE 17 at 7, ¶ 71].

Resendez also alleges that he sought help from Chancellor James Dworkin ("Dworkin") who promised he would "take care of the situation." [*Id.*, ¶ 73]. Resendez further alleges that Dworkin directed him to an HR person but refused to meet with him further or to lift his suspension. [*Id.*].

3

Based on these facts, Resendez initiated this action on December 16, 2016. In response to a motion to dismiss, Resendez filed the operative Amended Complaint on April 25, 2017, which includes six counts. Count I alleges that Defendants PNC/PNW and Purdue University racially discriminated against Resendez in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. In Count II brought pursuant to 42 U.S.C. § 1983, Resendez alleges that Prance, Albano, and Dworkin, in their individual capacities, violated his rights under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution by treating non-white students-athletes differently than white student-athletes. Also pursuant to 42 U.S.C. § 1983, Resendez raises *Monell* failure to train, failure to supervise, failure to discipline, failure to adequately screen and investigate, and unconstitutional adopted policy claims against Prance, Albano, Dworkin, and Daniels in Count VI. Notably, the Amended Complaint does not specify whether Count VI is being raised against Prance, Albano, Dworkin, and Daniels in their individual or official capacities. Additionally, Resendez brings pendent claims against Prance in his individual capacity for defamation (Count III), defamation *per se* (Count IV), and intentional infliction of emotional distress (Count V) under Indiana law.

In support of these claims, Resendez alleges that his suspension is a result of being treated differently based on his race. [*Id.*, ¶ 81]. Resendez asserts that a white player on the PNC baseball team had multiple arrests for battery and driving while intoxicated, yet was only suspended for ten (10) games. [*Id.* at 8, ¶ 83]. Additionally, Resendez contends that multiple white players were found to have resisted arrest, yet were not suspended. [*Id.*, ¶ 84]. More generally, Resendez alleges belief that he and the two other minority players did not get to play as much as their white fellow athletes. [*Id.*, ¶ 86].

Resendez further alleges that the Title VI and equal protection violations directed at him are part of a broader program of disparate treatment of minorities at PNC. He asserts systematic violations of the equal protection rights of minorities at PNC due to a lack of adequate employee training, supervision, protocols and investigation into matters of discrimination. [*Id*. at 8–10, ¶¶ 87–101]. He also claims that Dworkin, Albano, and Daniels are responsible for these failures. [*Id*. at 12, ¶¶ 118–36].

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants now seek dismissal of all six of the claims in Resendez's amended complaint.

**I.   ANALYSIS**

Under Fed. R. Civ. P. 12(b)(6), dismissal of a complaint is appropriate when the complaint fails to allege a cause of action for which relief can be granted. Federal law only requires a plaintiff to provide a short and plain statement of the claim that the pleader is entitled to relief. Fed. R. Civ. P. 8; *see Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992). When considering a 12(b)(6) motion to dismiss, the court should read the complaint in the light most favorable to the non-movant, accepting all of her well-pleaded facts as true and drawing all reasonable inferences in her favor. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 504 (7th Cir. 2013). A complaint that states a plausible claim for relief survives a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (holding that there is no probability requirement at the pleading stage, yet the alleged facts must be plausible so as to entitle a person to relief even if recovery is remote and unlikely). A claim has the requisite plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Archer v. Chisholm*, 870 F.3d 603, 612 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. 678).

### A. Federal Claims under Title VI (Counts I) and the Equal Protection Clause (Counts II and VI)

Resendez contends that his suspension from the baseball team violates the Equal Protection Clause of the Fourteenth Amendment as well as Title VI of the Civil Rights Act of 1964, which forbids racial discrimination by recipients of federal grants. 42 U.S.C. § 2000d; *cf. Brewer v. Board of Trustees,* 479 F.3d 908, 921 (7th Cir. 2007) (analyzing a graduate student's Title VI claim that he was dropped from his graduate program because of his race). Resendez's Title VI and equal protection claims allege that he was punished more severely than if he had been white.

Defendants assert that Counts I, II, and VI all rest on the same factual and constitutional foundation, but that Resendez fails to allege plausible facts and the requisite elements for an equal protection claim. Furthermore, Defendants argue that Defendants Prance, Albano, Dworkin, and Daniels are protected by the doctrine of qualified immunity. Additionally, Defendants contend that Count VI fails because it fails to state a claim and is barred by the Eleventh Amendment despite Resendez's invocation of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

#### 1. Legal Standard

In this case, the legal standard for Resendez's federal claims (Counts I, II, and VI) are essentially the same. Title VI prohibits intentional discrimination on the basis of race, color, or national origin in programs receiving federal financial assistance. 42 U.S.C. § 2000d; *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). Similarly, "[t]he Equal Protection Clause grants to all Americans the right to be free from invidious discrimination in statutory classifications and other governmental activity." *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996) (internal quotations and citations omitted). As relevant in this case, the Equal Protection Clause prohibits racial discrimination by state actors. *See West v. Atkins*, 487 U.S. 42, 49 (1988).

6

Individuals facing racial discrimination by a state actor, proscribed by the Equal Protection Clause, may seek relief pursuant to 42 U.S.C. § 1983. *Cf. Muckway v. Craft*, 789 F.2d 517, 521 (7th Cir. 1986) (noting that a § 1983 claim is a tort action, requiring proof of duty, breach, causation, and damages). It is firmly established that a defendant in a Section 1983 suit acts under color of state law when he abuses the position given to him by the State. *West*, 487 U.S. at 50. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law. *Id.* However, "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (2012). In order to establish liability under Section 1983, a plaintiff must show that the defendants acted with a nefarious discriminatory purpose based on the plaintiff's membership in a definable class. *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979); *see also Albright v. Oliver*, 975 F.2d 343, 348 (7th Cir. 1992), aff'd, 510 U.S. 266, 114 (1994).

Equal protection claims, like Resendez's, are raised under 42 U.S.C. § 1983 to protect an enforceable constitutional right and must be litigated in accordance with any comprehensive scheme enacted to enforce an identical statutory right. *See Williams v. Wendler*, 530 F.3d 584, 586 (7th Cir. 2008) (citations omitted). As suggested above, Title VI provides the statutory right to be free from racial discrimination from institutions receiving federal funding, which includes state universities like PNC in this case. Consequently, the Fourteenth Amendment right to be free from racial discrimination by state actors, which undisputedly includes state universities like PNC, is identical to the statutory right established through Title VI. As a result, the shared element of intentional discrimination will be a determinative element in both Resendez's Title VI and equal protection claims set forth in Counts I, II, and VI of his Amended Complaint.

### 2. Count I: Violation of Title VI against PNC/PNW and Purdue University

A Title VI plaintiff who has experienced disparate treatment does not have a claim unless that discriminatory treatment was intentional. See *Sandoval*, 532 U.S. at 280. Intentional discrimination implies more than intent as volition or intent as awareness of consequences. *Shango*, 681 F. 2d at 1104 (7th Cir. 1982). It implies that a decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing adverse effects on the identifiable group. *Id*. Hispanics are one such identifiable group. *Cf. Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 923 (7th Cir. 2007) (analyzing disparate treatment claim based on Hispanic employee's status as a member of a protected class). Additionally, the use of racially derogatory language is strong evidence of racial animus, an essential element of any equal protection claim. See *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000).

Resendez alleges racial animus based on: (1) Prance's referring to him with the alleged racial slur "Mexican with a beard" and (2) the three minority players on the team receiving less playing time than their white counterparts. Both of these allegations of racial animus stem from Prance's conduct only. Resendez has not directly alleged any racial animus on the part of PNC or Purdue University, the only two defendants named in Count I under Title VI. Instead, Resendez appears to be relying upon all of the facts surrounding Resendez's suspension from the baseball team to support his Title VI claim against the university. Even reading Resendez's Amended Complaint in the light most favorable to him, the Court might only glean an allegation of *disparate impact* by Title VI institutional defendants, not the *intentional discrimination* required to sustain a Title VI claim. Accordingly, Resendez's Title VI claim fails.

### 3. Count II: Section 1983 Equal Protection Claim against Prance, Albano, and Dworkin in their Individual Capacities

"An equal protection violation occurs only when different legal standards are arbitrarily applied to similarly situated individuals." *Smith on Behalf of Smith v. Severn*, 129 F.3d 419, 429 (7th Cir. 1997). Here, Resendez alleges disparate treatment based on: (1) Prance referring to him as a "Mexican with a beard," "pussy," and "lazy piece of shit;" (2) his suspension from the baseball team after the March 30th verbal altercation with Prance; (3) no other player being subject to the same level of punishment despite allegedly comparable misconduct; (4) Prance's false claim of physical assault against him after the verbal altercation; (5) Prance's false report about him to police authorities; and (6) no other player being subjected to a false claim. Intentional discrimination is still determinative. Therefore, the Court must determine whether it can infer discriminatory intent by Prance, Albano, and Dworkin based on Resendez's allegations of racial animus and disparate treatment based on his race.

#### a. Intentional Discrimination

Resendez contends that he has sufficiently pleaded racial animus, pointing to Prance's use of the alleged racial slur "Mexican with a beard" and his allegedly false police report regarding the paint ball incident. As to the racial slur, Resendez argues that such a description represents an unfair assumption of Mexican national origin based on his dark complexion and Hispanic heritage. [DE 24 at 3]. Yet Resendez only alleges that Prance used it to describe him on one occasion, and in the context of dealing with the campus police.[3] Moreover, it is a fact that Resendez has a dark complexion, is of Mexican heritage, and does not dispute that he had a beard at the time of the statement. Even viewing the facts in the light most favorable to the Plaintiff, it is difficult for the

---

[3] Resendez does not provide any other context for Prance's statement. The pleadings are silent on whether or not the campus police had contacted Prance about players and/or non-players using the field after practice. Even drawing inferences in favor of the non-movant, the intent of this statement remains nebulous.

Court to envision that a single instance of describing Resendez accurately as a "Mexican with a beard" displays racial animus or rises to the level of racial animus necessary to show a violation of the Equal Protection Clause. Furthermore, the use of racially derogatory language—if the factual phrase "Mexican with a beard" is actually racially derogatory—does not necessarily violate the Constitution. *DeWalt*, 224 F.3d at 612.

With respect to Prance's April 2015 police report, Resendez explicitly admits that Prance was not acting within the scope of his employment when he filed a police report—that Resendez claims was false—alleging Resendez was involved in the paint ball incident. Prance's April 2015 police report is therefore irrelevant to Resendez's equal protection claim as it was not made under color of state law.

Resendez's allegations that he was treated differently than similarly situated white players also fails to support a claim of intentional discrimination by Prance, Albano, and Dworkin. While it is true that Resendez was suspended for longer than any other player mentioned in the Amended Complaint, the cases of PNC baseball-player discipline Resendez cites for comparison involve off-campus criminal conduct rather than the direct insubordination exhibited by Resendez. For instance, Resendez alleges that one of the disciplined white players was only suspended for ten games as the result of multiple arrests for battery and driving while intoxicated while other white players were not suspended despite resisting arrest. The white players' criminal conduct, while serious, did not involve misconduct against the team or its coaches, as Resendez's verbal altercation with Prance, the head coach, did. As a result, Resendez has not alleged disparate treatment of truly similarly-situated individuals.

Significantly, Resendez only cites two types of allegedly comparable cases, neither of which included insubordination or any kind of violation of team rules. The Seventh Circuit has

held that a plaintiff must cite more than two dissimilar cases to be able to show an inference of discriminatory intent. *Williams*, 530 F.3d at 588–89. In *Williams*, the plaintiffs were three black sorority members who were suspended from their university for hazing another black female student who was pledging the sorority. *Id.* at 585–86. As part of their Title VI and equal protection claims, the plaintiffs alleged that "the university systematically treat[ed] black hazing more unforgivingly than white hazing." *Id*. at 587. In their attempt to show that the university was more lenient on white hazing, the plaintiffs presented two examples of hazing incidents that the court found presented situations dissimilar from those at the core of the plaintiffs' claims. *Id.* at 587–88. The court refused to infer discriminatory intent from those two dissimilar cases explaining that they were too small a sample of potentially discriminatory conduct to support the inference. *Id.* at 588–89. The court reasoned that very small samples of dissimilar cases can be differentiated on many different bases cancelling out any racial differences that those cases may suggest. *Id.*

Here, Resendez similarly presents a small sample of dissimilar situations that cannot on their own support an inference of discrimination. As discussed above, the off-campus criminal conduct of the white players does not equate to Resendez's alleged insubordination, for which different consequences could be justified. In other words, Resendez has not alleged examples of white players who were insubordinate like he was but were disciplined differently.

Similarly, Resendez has not alleged facts that plausibly support his allegation that non-white players were given less playing time than their white counterparts. For example, Resendez has not alleged that the non-white players were just as skilled as their white counterparts. Nor has Resendez even alleged that no white players were subjected to decreased playing time. As a result, Resendez has not alleged a plausible connection between lack of playing time and players' races.

Having failed to plead plausible facts to reasonably infer discriminatory intent or disparate treatment based on race, Resendez has failed to state a claim under Section 1983 for an equal protection violation by Prance, Albano, or Dworkin in their individual capacities.

### b. Qualified Immunity

Even if Resendez had pleaded the discriminatory intent and disparate treatment sufficient to state an equal protection claim, qualified immunity would protect Prance, Albano, and Dworkin from liability. The doctrine of qualified immunity protects public officials from civil suit based on their discretionary functions "'as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 352 (7th Cir. 2005) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). Qualified immunity should only be denied when (1) the complaint adequately alleges "facts that, if true, would constitute a violation of a constitutional right, and (2) the case law [is] clearly established at the time of the alleged violation, so that a reasonable public official would have known that his conduct was unlawful." *Id.* at 353 (internal citations omitted). "The burden is on the plaintiff to prove that a right was clearly established at the time of the conduct at issue." *Id.* The plaintiff must "point to closely analogous cases decided prior to the defendant's challenged actions" in order to prove the presence of a clearly established constitutional right. *Id.* In the end, qualified "immunity protects all but the plainly incompetent or those who knowingly violate the law." *White v. Pauly*, 137 S. Ct. 548, 551 (2017)

As Resendez has not adequately alleged facts which, if true, would constitute a violation of his constitutional right to equal protection, Prance, Albano, and Dworkin are immunized from suit under the doctrine of qualified immunity. Furthermore, Resendez has not cited any analogous cases to show that a clearly established right exists for a college baseball player who is a member

of a protected class to not be suspended from the team because of a verbal altercation with the coach.  Therefore, qualified immunity precludes Resendez's equal protection claim against Prance, Albano, and Dworkin.

### 4. Count VI:  Section 1983 Equal Protection Claim against Prance, Albano, Dworkin and Daniels citing *Monell*

In *Monell v. Dep't of Soc. Servs.*, the Supreme Court held that municipalities constitute "persons" acting under color of state law under 42 U.S.C. § 1983 when equitable relief in the nature of back pay is sought against local government officials sued in their official capacities. 436 U.S. at 662, 690.  Through Count VI, Resendez generally alleges that Purdue University and its employees lack "protocols" and are engaged in "pervasive" customs of "improper motives" and "personal vendettas" in "discipline to students and disqualification of students and student athletes."  [DE 17 at 9, 12–13, ¶¶ 94–96, 125–27, 131, 133].  Yet Resendez does not explicitly name PNC, Purdue University, or its Trustees as defendants in Count VI.  Additionally, the Amended Complaint does not indicate whether Prance, Albano, Dworkin, and Daniels, who are explicitly named as defendants in Count VI, are being sued in their individual or official capacities in Count VI.

However, the Court assumes that all four university officials are being sued in their individual capacities despite this lack of clarity in the Amended Complaint because Resendez implies such in his brief responding to Defendants' instant motion to dismiss.[4]  [*See* DE 24 at 9–10].  Moreover, Resendez's Count VI would be moot if these Defendants were sued in their official

---

[4] Interestingly, Resendez argues in his response brief that "[w]hile Albano and Dworkin were not directly making false claims of assault or racial slurs against Plaintiff, they are responsible for being negligent in their official capacities. . . ."  [DE 24 at 3].  This flies in the face of his explicit notation in Count II of Resendez's Amended Complaint that Prance, Albano, and Dworkin are being sued in their individual capacities [DE 17 at 10] and his arguments regarding liability in a personal capacity under *Monell* in his response brief.  [DE 24 at 9–10].  Resendez's filings only confuse the matter forcing the Court to infer his intent.

capacities. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."). As such, individual liability does not make sense under the *Monell* doctrine.

### a. Eleventh Amendment

First, *Monell*'s applicability is "limited to local government units which are not considered part of the State for Eleventh Amendment [immunity] purposes." 436 U.S. at 690 n.54. Purdue, and by extension its officials, have been found to be instrumentalities of the State privy to Eleventh Amendment protection. *Kashani v. Purdue University*, 813 F.2d 843, 848 (7th Cir. 1987). As a result, Prance, Albano, Dworkin, and Daniels (collectively "the Four Officials") are immune from suit in their official capacities even under a *Monell* theory. The Court assumes that is why Resendez argues that all four are being sued in their individual capacities. Accordingly, the Court will consider whether Resendez's Amended Complaint sufficiently pleads a *Monell* claim against any of them personally.

### b. Merits of *Monell* Claims

Second, Resendez has not pleaded plausible facts to allow the Court to draw the reasonable inference that they are liable for alleged misconduct under any *Monell* theory. The Court in *Monell* held that "a constitutional deprivation may be attributable to a municipality when execution of a government's policy or custom . . . inflicts the injury." *Houskins v. Sheahan*, 549 F.3d 480, 493 (7th Cir. 2008) (quotations omitted). Plaintiffs can establish such constitutional deprivations by showing "(1) an express policy causing the loss when enforced; (2) a widespread practice constituting a 'custom or usage' causing the loss; or (3) a person with final policymaking authority causing the loss." *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008).

14

In the Amended Complaint, Resendez only alleged a lack of policies or an objectively indifferent acceptance of policy violations generally without identifying any particular policy that caused his injury. Yet Resendez seems to be attempting to allege a widespread practice of racial discrimination that constitutes a "custom or usage," but fails to do more than make conclusory statements without reference to any facts other than his own experience to make such a claim plausible. *See Snyder v. Smith*, 7 F. Supp. 3d 842, 869 (S.D. Ind. 2014) ("a repackaging of a single factual allegation into a broad legal claim is precisely the sort of "mere conclusory statement[ ]" that *Iqbal* held to be insufficient to state a claim. *See Iqbal,* 556 U.S. at 67 . . . .").

Similarly, Resendez has failed to allege that a final policymaker caused his loss or injury. Only through Resendez's response brief, not his Amended Complaint, does the Court learn that he "is suing Mitch Daniels as one of the policymakers under his § 1983 claim." [DE 24 at 10]. In fact, it is impossible to infer from the Amended Complaint that Daniels is a relevant final policymaker in this situation because all Resendez alleges against Daniels is that he was the university president [DE 17 at 2, ¶ 8] and that upon information and belief, "PNC/Purdue University, by the supervision of . . . Dworkin, Albano, and Mitch Daniels at the time, . . . has a failure to train its employees to ensure accurate information is conveyed in investigations." [*Id. at 12*, ¶ 121].

No other allegations against Daniels or any other Defendant infers final policymaking authority. For instance, Resendez's allegations regarding Dworkin are limited to his employment title, his race, his successor, and his role as an audience and intermediary for Resendez while he reacted to the suspension. Additionally, the Amended Complaint does not allege plausible facts to show who is responsible for establishing team conduct rules or coaching policies that may have

15

directed Albano's or Prance's conduct in dealing with Resendez. Therefore, Count VI cannot survive Defendants' motion to dismiss.

### c. Qualified Immunity

Third, any potentially valid *Monell* claims against the Four Officials as individuals would be precluded because of qualified immunity, just as Prance, Albano, and Dworkin were protected from Resendez's claims in Count II. Here, Resendez has again failed to allege facts that if true would constitute a violation of a constitutional right as discussed above. *See Kiddy-Brown*, 408 F.3d at 353. Similarly, Resendez has not cited any analogous cases of *Monell* liability against individual state university officials for lack of protocols or adopted policies that racially discriminate against non-white baseball players. *See White*, 137 S. Ct. at 551. In fact, Resendez cites no cases of *Monell* liability against individual state university officials. As such, Prance, Albano, Dworkin, and Daniels are immunized from Count VI under the doctrine of qualified immunity.

### B. Pendent State Law Claims under Indiana Law

In light of Resendez's failure to state a claim upon which relief can be granted on any of his federal claims under Title VI of the Civil Rights Act of 1964 or the Equal Protection Clause of the Fourteenth Amendment, his state law claims need not be addressed here. With no valid federal claims remaining and no allegations of diversity under 28 U.S.C. § 1332, this Court lacks subject matter jurisdiction over Resendez's defamation (Count III), defamation *per se* (Count IV), and intentional infliction of emotional distress (Count V) claims against Prance.

### III. CONCLUSION

For the reasons presented above, the undersigned finds that Resendez has failed to plead plausible facts to sufficiently support his claims of racial discrimination against (1) PNC/PNW and

Purdue University under Title VI of the Civil Rights Act of 1964 (Count I); (2) Prance, Albano, and Dworkin in their individual capacities under 42 U.S.C. § 1983 (Count II); and (3) Prance, Albano, Dworkin, and Daniels under a *Monell* theory of liability (Count VI). Furthermore, Prance, Albano, Dworkin and Daniels have the protection from Counts II and VI afforded by qualified immunity. With no valid federal claims remaining, there is no jurisdictional basis by which the federal courts can hear the state claims. Therefore, the undersigned **RECOMMENDS** that the Court **GRANT** Defendants' motion to dismiss as to all Counts. [DE 21].

> **NOTICE IS HEREBY GIVEN that within fourteen (14) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**
>
> **SO ORDERED.**

Dated this 26th Day of January, 2018.

                                                    s/Michael G. Gotsch, Sr.
                                                  Michael G. Gotsch, Sr.
                                                  United States Magistrate Judge