UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JOSE RESENDEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:16-cv-862 JD |
| | ) | |
| SHANE PRANCE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Jose Resendez, who played baseball for Purdue University Northwest, alleges in this action that his coach made racially derogatory comments and falsely accused him of misconduct and a criminal offense, leading to his suspension from the team. He sued the coach, asserting an equal protection claim for racial discrimination under § 1983 and state claims for defamation and intentional infliction of emotional distress. He also asserted a claim against the university under Title VI, and claims against university administrators under § 1983. The defendants moved to dismiss the complaint in its entirety. They argue that the complaint fails to state a claim for discrimination, and that the claims are also barred by various immunities under federal and state law, among other arguments. On a referral, the magistrate judge recommended that the Court grant the motion. Resendez has objected to that recommendation. For the reasons that follow, the Court grants the motion in part and denies it in part.

## I. FACTUAL BACKGROUND

Plaintiff Jose Resendez was a student at Purdue University North-Central, now known as Purdue University Northwest. He was a member of the baseball team during the 2014–15 season. Defendant Shane Prance was the head coach of the team, and defendant Tom Albano was the athletic director.

Resendez alleges that he "is of Hispanic heritage, specifically Mexican, and is brown-skinned and darker compl[exioned], typical of his heritage." [DE 17 ¶ 16]. In this action, he alleges a series of incidents in which he believes Prance mistreated him because of his race. He alleges that on March 19, 2015, "Prance directed a racially derogatory comment to Resendez, specifically, 'I don't want to deal with campus police saying a Mexican with a beard is jumping the fence and causing trouble on the field, [Resendez] that was directed to you.'" *Id.* ¶ 34. On March 30, 2015, Prance allegedly called Resendez a "pussy" and "a lazy piece of shit." *Id.* ¶ 36. That prompted a verbal altercation between the two, but Resendez alleges that no physical contact occurred. Prance nonetheless stated during a phone call with Resendez's father that Resendez had attacked him and chest-bumped him 4–5 times. Prance also made Resendez run for two hours straight during the practice the following day.

Late in the evening on April 14, 2015, Prance called the police to report that a paintball gun was being fired at his house and that he could hear the paintballs hitting the house. When police arrived, he reported that he saw a vehicle outside his house during the incident, and that he recognized it as belonging to Resendez's girlfriend. He further stated that, a couple minutes later, he saw the same vehicle in the area, and he was able to identify Resendez as the driver. Resendez alleges, however, that these allegations were false, and that he and his girlfriend were not even in the same town as Prance's home at the time of the incident. Resendez alleges that these false accusations were racially motivated. In response to the accusation, police contacted Resendez, who offered to let them search for a paintball gun, but none was found.

Shortly thereafter, Resendez was summoned to a meeting with Albano, the athletic director. Prance had reported to Albano that Resendez physically assaulted him by charging and bumping into him during the incident on March 30. Prance further reported that Resendez had

shot paintballs at his house. Accordingly, Resendez was suspended from the team pending an investigation into those incidents.

Resendez alleges that Albano investigated Prance's allegations about the assault and found that they were false, but that Resendez remained suspended and Prance was not disciplined. Resendez also sought help from the chancellor, defendant James Dworkin. Dworkin initially represented that he would "take care of the situation," but he then refused to meet with Resendez. *Id.* ¶ 73. Resendez alleges on information and belief that Dworkin "knew about the racial slurs," but that Prance was not disciplined except for being told "not to use the racial slurs again." *Id.* ¶¶ 78–80.

Resendez further alleges that Prance's treatment of him was part of a pattern of treating non-white players worse than their white counterparts. He alleges that white players on the team were not disciplined as severely for their misconduct and that Prance did not file false police reports against any white players. He also alleges that non-white players received less playing time.

Resendez filed this action, asserting federal claims for racial discrimination, and state claims for defamation and intentional infliction of emotional distress. In response to a motion to dismiss, Resendez filed an amended complaint. The defendants then moved to dismiss the amended complaint as well. The Court referred that motion to the magistrate judge for preparation of a report and recommendation. In the report and recommendation, the magistrate judge recommended that the federal claims be dismissed for failure to state a claim, and that the Court relinquish supplemental jurisdiction over the state claims. Resendez timely objected to that report and recommendation, after which he moved to supplement his objection. The objections are now ripe for ruling.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

That same standard of review applies to the Court's review of the magistrate judge's report and recommendation. Under Federal Rule of Civil Procedure 72(b)(3), the district court must undertake a *de novo* review "of those portions of the magistrate judge's disposition to which specific written objection is made." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995); *see also* 28 U.S.C. § 636(b)(1). Here, Resendez has objected to each of the magistrate judge's recommendations, so the Court evaluates the sufficiency of the complaint *de novo*.

## III.  DISCUSSION

The defendants move to dismiss the amended complaint in its entirety. The Court first considers the federal claims. Finding that Resendez has adequately pled one of his federal claims, the Court then addresses the state claims as well.

### A.      Federal Claims

Resendez first asserts three claims under federal law. In Counts 1 and 2, Resendez alleges that he was discriminated against because of his race. Count 1 alleges that Purdue is liable for that discrimination under Title VI, while Count 2 alleges that Prance, Albano, and Dworkin are liable for that discrimination under § 1983 and the Equal Protection Clause. Resendez also asserts a separate claim under *Monell* in Count 6.

"The Equal Protection Clause grants all Americans 'the right to be free from invidious discrimination in statutory classifications and other governmental activity.'" *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 799 (7th Cir. 2015) (quoting *Harris v. McRae*, 448 U.S. 297, 322 (1980)). "Unless it is narrowly tailored to serve a compelling state interest, racial discrimination by state actors violates the Equal Protection Clause of the Fourteenth Amendment." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). When a state actor violates that right, a plaintiff may seek relief under § 1983. *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996). To be liable under § 1983, though, a defendant must have acted "either intentionally or with deliberate indifference." *Doe v. Galster*, 768 F.3d 611, 622 (7th Cir. 2014). Title VI likewise prohibits discrimination on the ground of race or national origin. 42 U.S.C. § 2000d ("No person in the United States shall, on the grounds of race, color, or national origin, . . . be subjected to discrimination under any program or entity receiving Federal financial assistance."); *Galster*, 768 F.3d at 617. Title VI claims may be brought against an institution that receives federal

financial assistance, and it similarly reaches only intentional discrimination. § 2000d; *Alexander v. Sandoval*, 532 U.S. 275, 281–82 (2001).

The Court begins with the § 1983 claim against Prance, as Prance's alleged conduct forms the core of Resendez's complaint. Resendez alleges that Prance discriminated against him by making racially derogatory statements and by falsely accusing him of misconduct because of his race, causing him to be suspended from the team.[1] At the outset, the defendants argue that racially derogatory language does not by itself give rise to an Equal Protection violation. *DeWalt*, 224 F.3d at 612 ("The use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution."); *Sherwin Manor Nursing Ctr., Inc. v. McAuliffe*, 37 F.3d 1216, 1221 (7th Cir. 1994) ("The defendants' anti-Semitic remarks may not by themselves give rise to an equal protection action . . . ."). However, the defendants do not dispute that Resendez's suspension could give rise to an equal protection claim if it was racially motived. Thus, the operative question is whether Prance caused Resendez to be suspended because of his race.

The Seventh Circuit has set a low bar for pleading discrimination. It has held that plaintiffs need only identify a challenged action and allege that the defendant acted because of their race. *E.g.*, *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833 (7th Cir. 2015) (holding that a discrimination claim need only plead "the type of discrimination," "by whom," and "when"); *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 633 (7th Cir. 2013) ("'A complaint alleging race discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of his race.'"

---

[1] As noted below, Prance's statement to the police about the incident at his home would be private conduct not covered by § 1983. However, repeating that accusation to other university officials and causing Resendez to be suspended on that basis would be within the scope of Prance's employment and actionable under § 1983.

(quoting *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013) (internal alterations omitted))); *Tamayo v. Blagojevich*, 526 F.3d 1072, 1084 (7th Cir. 2008) ("Once a plaintiff alleging illegal discrimination has clarified that it is on the basis of her race, there is no further information that is both easy to provide and of clear critical importance to the claim."). Resendez has done that here as to Prance, alleging that Prance held a racial animus and that he treated Resendez differently and caused him to be suspended because of his race. [DE 17 ¶¶ 54, 81].

In arguing to the contrary, the defendants focus on the specific allegations that the complaint offers in support of its allegation of a racial animus. They argue that the allegedly derogatory comment was not actually derogatory, and that Resendez has not shown that the white players whom he alleges were treated better than him were similarly situated, so as to support an inference of discrimination. Those arguments are premature at the pleading stage, though. As the Seventh Circuit discussed in *Carlson*, a "plaintiff is not required to include allegations—such as the existence of a similarly situated comparator—that would establish a prima facie case of discrimination" in order to survive a motion to dismiss. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014). At summary judgment, Resendez will need to present evidence in support of his claim, but he need not plead such evidence in his complaint. Because he has alleged that Prance caused him to be suspended because of his race, Resendez has adequately pled an equal protection claim against Prance.

Prance also argues that, even if this count states a claim, he is entitled to qualified immunity because it is not clearly established that "a college baseball player who is a member of a protected class cannot be suspended from the team on account of a verbal altercation with the coach." [DE 22 p. 9–10]. That argument is misplaced. The whole point of this claim is that

Resendez was suspended *not* because of "a verbal altercation with the coach," but because of his race. And it has long been well-established that the government may not intentionally discriminate on the basis of race (unless "narrowly tailed" to serve a "compelling state interest," which is not at issue here). *Harris*, 448 U.S. 297; *Huri*, 804 F.3d at 834–35 (holding that qualified immunity was inapplicable where the plaintiff alleged intentional discrimination); *Galster*, 768 F.3d at 622; *DeWalt*, 224 F.3d at 618; *Nabozny*, 92 F.3d 453. If the evidence ultimately shows that Resendez was suspended only for a verbal altercation with his coach, then Resendez will have failed to prove an equal protection claim in the first place. But if he proves that Prance intentionally discriminated against him and caused him to be suspended because of his race—which he has alleged—then qualified immunity will not shield Prance from liability for that intentional misconduct. Therefore, the Court denies the motion to dismiss Count 2 as to Prance.

The result is different, though, as to Albano and Dworkin—the athletic director and the chancellor. As discussed above, defendants can only be held liable under § 1983 if they acted "intentionally or with deliberate indifference" to the unlawful discrimination. *Galster*, 768 F.3d at 622; *see also Nanda v. Moss*, 412 F.3d 836, 842 (7th Cir. 2005). Resendez does not allege that either Albano or Dworkin harbored any discriminatory animus. He argues only that they were "negligent" in failing to prevent Prance's discrimination. [DE 24 p. 3]. Negligence cannot give rise to liability under § 1983, though. *Chavez v. Ill. St. Police*, 251 F.3d 612, 651 (7th Cir. 2001) ("Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable [under § 1983]. The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see."); *Nabozny*, 92 F.3d at 454 ("A showing that the defendants were negligent will not suffice."). Resendez does allege that

Albano knew (or at least learned) that Prance's accusations were false, but he does not allege that Albano knew they were discriminatory. As to Dworkin, Resendez alleges that he "knew about the racial slurs," but as noted above, racial remarks themselves are not actionable, and Resendez does not allege that Dworkin had reason to believe that Resendez's suspension or the accusations that led to it were racially motivated. Thus, because the complaint does not allege that either Albano or Dworkin acted intentionally or with deliberate indifference to Prance's alleged discrimination, it has failed to state a claim against them under § 1983. The Court therefore dismisses Count 2 as to Albano and Dworkin.

Resendez also asserts a claim against Purdue under Title VI, which forbids discrimination by recipients of federal funds. As discussed above, Resendez has adequately pled that he was discriminated against by Prance. However, Title VI does not make entities vicariously liable for discrimination committed by their employees, even if the employee has a supervisory position over the plaintiff, such as with a teacher and student. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 288–90 (1998).[2] Rather, "in cases . . . that do not involve official policy of the recipient entity," the Supreme Court has held "that a damages remedy will not lie . . . unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Id.* at 290 (holding that a school district could not be held liable for sexual harassment by a teacher against a student unless a school

---

[2] *Gebser* addressed Title IX, but it noted that Title IX was modeled after Title VI and that they "operate in the same manner." *Gebser*, 524 U.S. at 286. The Seventh Circuit has also held that "Title VI and Title IX are so similar that a decision interpreting one generally applies to the other." *Galster*, 768 F.3d at 617.

official (other than the offending teacher) had actual knowledge of and was deliberately indifferent to the discrimination).

Here, despite alleging that his coach discriminated against him, Resendez's complaint does not allege intentional discrimination by Purdue or put Purdue on notice of how it should be held liable for that conduct. In *Su v. Eastern Illinois University*, 565 F. App'x 520 (7th Cir. 2014), for example, the Seventh Circuit held that the plaintiff adequately alleged a Title VI claim against a university. There, the plaintiff contended that he was denied admission because of his race, and he alleged "that the University intentionally employed discriminatory admissions standards . . . and that the decision wrongfully to deny him admission was implemented by administration officials with authority over the admissions process." *Su*, 565 F. App'x at 521. Resendez does not make any similar allegation here, as he does not allege that Purdue intentionally employed a discriminatory disciplinary process or that its administration officials acted with animus. Nor does he allege that any Purdue employee other than Prance knew of the discrimination. To the contrary, as discussed above, he alleges only that the other individuals were negligent. That does not state a claim under Title VI, so the Court grants the motion to dismiss as to Count 1.

Finally, Resendez purports to assert a *Monell* claim in Count 6. *Monell* addressed the way in which a municipality can be held liable under § 1983. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978) ("We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). However, the defendants on this claim—

Prance, Albano, Dworkin, and Mitch Daniels—are all individuals sued in their individual capacities, not municipalities or other governmental entities, so *Monell* is inapplicable. In addition, three of those four defendants were named as defendants in Count 2, and the basis for their liability as to Resendez's allegations is discussed above. The fourth—Daniels—is not mentioned in the complaint except to state that he is the president of the university. That suggests no basis on which he could be held liable for any of the conduct in this case. Accordingly, the Court grants the motion to dismiss Count 6.

**B.    State Claims**

Having found that Resendez has pled at least one federal claim, the Court must also consider the motion to dismiss his state claims, over which the Court has supplemental jurisdiction. In Counts 3, 4, and 5, Resendez asserts claims against Prance for defamation, defamation per se, and intentional infliction of emotional distress. The complaint does not identify the specific bases for the defamation counts, but from the briefing it appears that Count 3 is based on Prance's statement to Albano that Resendez assaulted him, and that Count 4 is based on Prance's statement to the police that Resendez shot paintballs at his house. The intentional infliction of emotion distress count is based on the whole course of conduct.

Beginning with Count 3, Resendez alleges that Prance defamed him by stating to Albano that Resendez "physically assaulted him by charging and bumping into him." [DE 17 ¶ 58]. In moving to dismiss, Prance first argues that he has immunity against this claim under the Indiana Tort Claims Act. "The ITCA provides that a government employee may not be named as a party in a civil suit where he acted 'within the scope of [his] employment.'" *Young v. Davis*, 40 N.E.3d 1254, 1256 (Ind. Ct. App. 2015) (quoting Ind. Code § 34-13-3-5(a)) (alteration in original). "To be within the scope of employment, conduct must be of the same general nature as that

authorized, or incidental to the conduct authorized." *Ball v. Jones*, 52 N.E.3d 813, 820 (Ind. Ct. App. 2016).

The conduct alleged in this count is clearly within the scope of Prance's employment. This count involves a statement that Prance, the baseball coach, made to the athletic director about an incident with one of his players during a team activity prior to a game. [DE 17 ¶¶ 58, ex. 1 p. 3 (noting that the incident took place at the field, "right before a game," as "the team was taking pre-game")]. A coach's discussion with an athletic director about an incident with a player during a team activity falls plainly within the scope of his employment as a coach. Resendez's allegation that Prance's statement was false does not take this statement outside the scope of his employment, either, as Indiana courts have recognized that "[e]ven tortious acts may fall within the scope of employment." *Ball*, 52 N.E.3d at 820 (finding that a police officer acted within the scope of his employment in preparing a probable cause affidavit, even though the plaintiff alleged that the officer falsified the affidavit). Thus, notwithstanding the conclusory allegation to the contrary, the complaint shows that Prance was acting within the scope of his employment for purposes of this conduct, so he is entitled to immunity. The Court therefore grants the motion to dismiss as to Count 3.

In Count 4, Resendez asserts a claim for defamation per se, apparently based on Prance's statement to the police that Resendez shot paintballs at his house. Prance first argues that he is entitled to immunity under the ITCA as to this count as well. Unlike the previous count, though, this conduct is not related to Prance's employment with the university. It arose out of an incident of vandalism at Prance's home, unrelated to any team activity or any aspect of his employment. The only connection between that incident and Prance's employment was that Resendez, whom he accused, happened to be one of his players. The ITCA does not sweep that broadly, though.

*See Waldrip*, 976 N.E.2d at 115 ("The mere fact of government employment does not by itself mean that ITCA applies to that employee. Rather, a causal relationship must exist between the plaintiff's injury and government employment."); *see also Young*, 40 N.E.3d at 1256–57 (finding that a council member was not immune for defamatory statements that were not made within the scope of any investigation authorized by the council, but were made in a "rogue attempt to damage the plaintiffs by . . . unfounded allegations"). Because this conduct is clearly outside the scope of his employment, Prance is not entitled to immunity against this claim under the ITCA.[3]

Prance also argues in the alternative that he is entitled to qualified immunity because this statement was made to law enforcement officers. In order to "enhance public safety by facilitating the investigation of suspected criminal activity," Indiana recognizes a qualified privilege for "communications to law enforcement officers." *Kelley v. Tanoos*, 865 N.E.2d 593, 597 (Ind. 2007). Thus, "statements made in good faith pursuant to investigation by police of a crime are made in the performance of a public duty and are privileged." *Id.* at 600. That privilege can be overcome, though, if: "(1) the communicator was primarily motivated by ill will in making the statement; (2) there was excessive publication of the defamatory statements; or (3) the statement was made without belief or grounds for belief in its truth." *Id.* at 598.

Here, Resendez has adequately alleged that the statement was made without belief or grounds for belief in its truth. According to the complaint (and the attached police report), Prance told officers that he looked outside when he heard his house being hit by paintballs, and he saw a car that he recognized as belonging to Resendez's girlfriend. He further stated that he saw that same car nearby, only a couple minutes later, and that he identified Resendez as the driver. [DE

---

[3] Repeating this statement to the athletic director would be within the scope of Prance's employment, as noted above, but making the statement to the police is not.

17 ¶ 43, DE 17-1 p. 5]. Those statements were the basis for Prance's accusation that Resendez shot the paintballs at his house, which would amount to criminal mischief. Yet, Resendez alleges that neither he nor his girlfriend were anywhere nearby, and that Prance knew that neither he nor his girlfriend were there. Perhaps the facts will show that Prance had a basis for believing that Resendenz was involved in the incident (or even that his accusation was true), but at the pleading stage, those facts suffice to allege that Prance made up having seen Resendez driving the car in question, meaning that the statement was made without belief or grounds for belief in its truth. Thus, dismissal of this count on the basis of qualified immunity is unwarranted, so the motion to dismiss Count 4 is denied.

Finally, Count 5 asserts a claim for intentional infliction of emotional distress, based on the totality of Prance's conduct towards Resendez. Prance again argues that this claim is barred by the ITCA. As discussed above, Prance is immune for his conduct taken within the scope of his employment, which includes his communications with the athletic director, as well as his conducts towards Resendez during team activities (like the alleged name-calling or making Resendez run for two hours during practice). However, Prance is not covered by immunity for the allegedly false police report in which he accused Resendez of committing a crime. Thus, Resendez can still pursue this claim to the extent it is based on that conduct. *See Waldrip v. Waldrip*, 976 N.E.2d 102, 116–17 (Ind. Ct. App. 2012) (finding that the defendant was immune for certain conduct within the scope of her employment, but that the plaintiff still stated a claim for intentional infliction of emotional distress based on other conduct outside the scope of the defendant's employment).

Prance also argues that Resendez's allegations do not state a claim. The elements of a claim of intentional infliction of emotional distress are that a defendant: "(1) engages in extreme

and outrageous conduct; (2) which intentionally or recklessly; (3) causes; (4) severe emotional distress to another." *Id.* Prance focuses on the first element, arguing that the alleged conduct is not "extreme and outrageous." "What constitutes 'extreme and outrageous' conduct depends, in part, upon prevailing cultural norms and values." *Bah v. Mac's Convenience Stores, LLC*, 37 N.E.3d 539, 550 (Ind. Ct. App. 2015). That element requires conduct that goes "beyond all possible bounds of decency." *Id.* Here, Resendez alleges that Prance filed a police report falsely accusing him of a crime, without a basis for or belief in the truth of that accusation, and that he did so for discriminatory reasons. Indiana courts have held in similar circumstances that making false police reports can support a claim of intentional infliction of emotional distress. *Id.* (denying summary judgment where there was evidence that the defendant falsely accused the plaintiff of a crime without a belief or grounds for belief in the truth of his statements to the police); *see also Waldrip*, 976 N.E.2d at 117 (finding that the plaintiff stated a claim for intentional infliction of emotional distress where the defendant falsely accused him of criminal conduct and then used the ensuing charges as leverage in child custody proceedings); *Williams v. Tharp*, 889 N.E.2d 870, 880 (Ind. Ct. App. 2008), *trans. granted on other grounds*, 914 N.E.2d 756 (Ind. 2009) (holding that filing a false police report can constitute extreme and outrageous conduct) (cited with approval by *Bah*, 37 N.E.3d 550 n.8).[4] Thus, at least for the pleading stage, the allegations of the false police report, the absence of a basis for the accusation, and the alleged

---

[4] The cases Prance cites are not to the contrary. In *Curry v. Whitaker*, 943 N.E.2d 354, 361 (Ind. Ct. App. 2011), for example, the defendants accused the plaintiff of a crime for which he was later acquitted, but the evidence showed that they had a reasonable basis for their accusation. And in *Moore v Anderson*, 76 N.E.3d 200 (table), 2017 WL 128223, at *3–5 (Ind. Ct. App. Jan. 13, 2017)—a non-precedential opinion—the plaintiff alleged that a guardian ad litem committed perjury at a custody hearing, but the allegedly false statements did not include accusations of criminal conduct or statements of similar magnitude, and the testimony was subject to cross-examination, thus minimizing any harm.

racial motivation suffice to allege extreme and outrageous conduct. Accordingly, the Court denies the motion to dismiss as to Count 5.

## IV. CONCLUSION

The Court GRANTS the motion to dismiss in part and DENIES it in part. [DE 21]. This action remains pending as to the claims against Prance in Counts 2, 4, and 5. The remaining counts and defendants are dismissed. Count 3 is dismissed with prejudice based on Prance's immunity, but the remaining dismissals are without prejudice to Resendez seeking leave to amend. The Court ADOPTS the report and recommendation [DE 30] in part, to the extent it is consistent with these holdings. Resendez's motion to supplement his objection [DE 32] is DENIED as moot.

SO ORDERED.

ENTERED: March 29, 2018

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court